Good morning, your honors. May it please the court, Jonathan Libby appearing on behalf of the appellant, Rudy Edwards, and I intend to reserve two minutes for rebuttal. Your honors, LAPD officers Matthew Bakitich and Robert Coates are convicted criminals, but the jury was never given an opportunity to hear that because the district court improperly precluded the defense from cross-examining the officers with their prior DUI convictions. As a result, Mr. Edwards' conviction should be reversed and a new trial should be ordered. The convictions went to the officers' credibility. Whether this is analyzed under Rule 608B, under 609, or under the Confrontation Clause, the fact that these officers who are sworn to enforce the law, sworn to uphold the law, violated that oath, that goes to truthfulness. One dictionary definition of the American... JUDGE LEBEN You're not arguing that, well, maybe you are. Let me put it in the form of a question. Are you arguing that the mere fact that a public officer, say a judge, is convicted of DUI, that that then amounts to untruthfulness on the part of the officer? MR. EDWARDS Well, I believe when it comes to a law enforcement officer... JUDGE LEBEN No. You said sworn oath. I mean, we all pretty much take the same oath. And is your argument that no matter what the crime is, that that renders that offense the basis for impeachment on grounds of credibility? MR. EDWARDS Well, Your Honor, I'm not sure that judges and police officers necessarily take the same oath. JUDGE LEBEN Well, let's assume that they do. MR. EDWARDS Okay, then yes. The answer would be yes. JUDGE LEBEN Okay. MR. EDWARDS It would be the same. JUDGE LEBEN All right. Well, how does it bear on credibility? MR. EDWARDS Well, one definition of truth, Your Honor, is fidelity to a standard. The standard for police officers is that they uphold the law, that they not violate the law. Police officers are supposed to be beyond the problem. JUDGE LEBEN Well, but wait a minute. That doesn't – that just proves that they are – they're mortal. It doesn't prove that at the time they took the oath, they lied. The question is whether or not since that time they've lived up to it. But that's not a question of credibility unless you can establish that they had the intent at the time they took the oath to go ahead and violate the law. MR. EDWARDS No, Your Honor, I believe it's when they violated the law they were sworn to uphold. JUDGE LEBEN Yes. MR. EDWARDS That goes to truthfulness. JUDGE LEBEN Why? MR. EDWARDS Well, the standard, the fidelity to the standard of enforcing the law and upholding the law. They took an oath. You know, I'm not sure these officers necessarily could have gotten on the force in the first place had they had the prior conviction. KENNEDY Well, what about somebody who gets a divorce or somebody who commits adultery? Let's put it that way. They swear not a – they swear a religious oath. Would that then be admissible if it's a law enforcement officer? MR. EDWARDS I don't believe a religious oath would be. KENNEDY Why not? It's a violation of a standard. A breach of fidelity. MR. EDWARDS Because we're talking about here the – their specific oath as a police officer was to uphold the law. KENNEDY The law. Okay. MR. EDWARDS And they broke the law they were sworn to uphold. And that goes to the officer's credibility. And it's especially important. KENNEDY What's your best case – what's your best case to, you know, support that proposition? Is this a case from the Southern District of New York? MR. EDWARDS Well, in terms of whether police should be held to a higher standard. KENNEDY In terms of impeachment. In terms of – this is not – MR. EDWARDS There does not appear to be a case out there that addresses the situation. KENNEDY You don't have a case right on point, do you? MR. EDWARDS No, I do not, Your Honor. There does not appear to be a case out there that's addressed the specific situation. Maybe it's surprising to you. It's not surprising to me that you don't – you can't find a case that doesn't deal with the law. KENNEDY Well, let's talk about the arrest. In the arrest, one of the officers actually lied during the course of the arrest. MR. EDWARDS That's correct. From what we know, from what we've been told by the government, because we did not actually see any documents, all of that was – our subpoena was quashed. But from what we've been told by the government, Officer Coates, in fact, lied during the investigation into his DUI conviction. So any driver who stopped and the officer says, have you been drinking, and he gives the standard DUI offender answer, I had two beers, when the evidence later shows that that's not true, that's fair game for impeachment down the road if that person ever testifies as a witness? MR. EDWARDS I think it certainly could be, Your Honor. KENNEDY Does that depend on that witness being the law enforcement officer? Does that apply to anybody? MR. EDWARDS Well, I think it could potentially apply to anyone. What we're dealing with here are police officers. And I think it's especially important when we are dealing with police officers. KENNEDY Well, in this case, that's something that's subject to weighing, isn't it, in terms of probative value versus prejudice and waste of time and so forth? MR. EDWARDS Well, it would depend on under which analysis it would go. Under rule – KENNEDY Well, let's take Rule 609. THE COURT Let's take Confrontation Clause. You wouldn't say it's subject to weighing there, is it? MR. EDWARDS Well, the Court was still under the Confrontation Clause. We need to see if its probative value was outweighed by undue prejudice. I don't think it could be shown under any analysis. If it were under 609 analysis, then you simply have to look, is this a misdemeanor conviction that went to, that involved dishonesty or false statement? And if it does, then it's automatically admissible. So it would depend on which analysis you took. KENNEDY Well, but you're talking about the arrest, not the conviction at this point, right? MR. EDWARDS Well, the specific kind of – KENNEDY First of all, DUIs, we understand the argument on DUIs. Let's suppose that we didn't agree with you on DUIs. What about the statement during the arrest? MR. EDWARDS Well, I think it would only matter if, in fact, he was convicted, which is what ultimately occurred here. You know, the fact – I mean, if they hadn't proven that he was lying – I mean, they only proved he lied because he was convicted. KENNEDY So what is it that you think minimally you're entitled to get into with respect to Coates? MR. EDWARDS Well, whether he has – I think we can ask him whether he has a prior conviction and whether or not he has lied to law enforcement in the past. KENNEDY Why do you need to get the conviction in? MR. EDWARDS For background. KENNEDY Well, let's suppose that we didn't buy your law officer's special status to uphold the law theory, but we found that the lie was, in fact, directly relevant to credibility since it was a lie. Then what would you claim you're entitled to get before the jury? MR. EDWARDS Well, I think then certainly the district judge could, in fact, limit us to just questioning with respect to whether, in fact, he has lied to law enforcement in the course of – well, I think we'd have to say in the course of an investigation into his own conduct,  CHIEF JUSTICE ROBERTS But you're basically, I think, making an argument that Rule 608B, that talks about specific instances of misconduct, should be amended, I guess, rather than leaving it to the discretion of the trial court, although the rule says that it is within the discretion of the court as to whether you'll be allowed to prove up the extrinsic conduct. MR. EDWARDS Under 608B, it is discretionary.  CHIEF JUSTICE ROBERTS Okay. And why shouldn't that same – I don't understand why we shouldn't ask. MR. EDWARDS We're not asking that you take the words in the discretion of the court out. In this case, I don't believe the court truly exercised discretion. I believe the court just determined this did not go to truthfulness, and so just decided as a matter of law it was excluded.  CHIEF JUSTICE ROBERTS But I guess my question really is, why isn't this whole issue of admissibility of what he said to the BRAEA officer within the discretion of the trial court under the rules of evidence as to whether he's going to permit – MR. EDWARDS Under 608B, it would be discretionary, absolutely.  MR. EDWARDS But again, I don't believe the judge in this case, in fact, exercised that discretion because we were never allowed to get into that. CHIEF JUSTICE ROBERTS Okay. MR. EDWARDS And I would just note with respect to broadly with law enforcement officers, this Court has discussed the aura of special reliability that police officers are accorded when they testify. CHIEF JUSTICE ROBERTS Well, let me just – before you move on to that, are you saying that your only argument is under 608B, or do you have other grounds for – MR. EDWARDS Well, I think the analysis is similar whether it's under 608B, which deals specifically with instances of conduct involving truthfulness, or 609 where you're dealing with a misdemeanor conviction that involves dishonesty, which is also defined as dishonorable or shameful actions. CHIEF JUSTICE ROBERTS Okay. But we have to agree with your premise before we get to 609. MR. EDWARDS That's correct. CHIEF JUSTICE ROBERTS Otherwise, we're under 608B. MR. EDWARDS That's correct. Or under the Confrontation Clause. CHIEF JUSTICE ROBERTS Okay. MR. EDWARDS In which case it's whether this was relevant evidence, which I think it absolutely was, whether it's – there was no other legitimate interest, whether or not the prejudicial effect outweighed its probative value, and whether or not there was other information available to – that could impeach these officers without this information. And when we're dealing with this special aura of reliability that is accorded police officers, and these were police officers who were testifying as police officers. They were asked questions in their capacity as police officers and gave answers in that capacity. So in order to pierce that aura, it was absolutely necessary for the defense to be able to question them with these prior convictions. CHIEF JUSTICE ROBERTS Okay. Thank you. MR. GINSBURG May it please the Court, Jason Gonzalez for the United States. The District Court's exclusion of the DUI evidence was proper. It was not a violation of the Confrontation Clause or an abuse of discretion for three reasons. First, the DUI evidence had minimal probative value. Second, the probative value that it had was outweighed by the likelihood of jury confusion and confusion of issues. And third, there was other evidence that was free of controversy that existed that more than adequately gave the jury enough information to assess the officer's credibility. CHIEF JUSTICE ROBERTS What was that? MR. GINSBURG There were testimony from five witnesses total as to what happened. CHIEF JUSTICE ROBERTS That just corroborates more or less. In this case, I'll tell you, I'm going to zero in on what really troubles me here. In fact, it was argued to the jury, the theory of the planted gun. I think we can take, I will take judicial notice of the fact that planted guns are not a figment of people's imaginations. Therefore, why isn't it extremely relevant that the one person who picked up the gun in the storeroom, unobserved by anybody else, actually lied to law enforcement officers when he was arrested and said he hadn't been drinking, not that his, at least the record seems to suggest, not that he'd had a couple of beers, but he denied that he'd been drinking? Why isn't that highly relevant evidence as to his credibility, his credibility, willingness to tell the truth when he's confronted with a situation, a law enforcement situation indeed? Why isn't that the kind of evidence the Confrontation Clause requires to come in, the abuse of discretion to exclude it? MR. GINSBURG I would say it is relevant. That's correct. But it's important to remember that Officer Coates, the officer that we're talking about, was not the officer that saw the defendant with the gun. That was Officer Fakadish. Officer Fakadish saw the defendant take the gun out and place it on the box. That's what he says. That's what Officer Fakadish said. That's what he says. Right. Nobody else saw the gun except the two police officers. Well, other witnesses, the store owner saw the defendant running with his hands low, which is consistent with what the officer said. But, yeah, Officer Fakadish was the only officer that saw the defendant with a gun in his hand, and he placed it in a box. That's his story. Correct. But he's not the one who made the allegedly false statement to the press. Right. And that's the point I'm trying to make is that Officer Coates, the defendant could have been convicted even if Officer Coates had not arrived at the scene at all. He could have if the jury believed that these cops weren't planting evidence. And because they're cops riding together, whether this is the first time or not, the jury might have concluded that this was a planted gun. That's why the prosecutor argued the theory, isn't it, to dispel that notion even from speculation on the part of the jury's mind? Perhaps. I would say that it's definitely true that the false statement does relate to Officer Coates' credibility. But I think that the overarching point about Officer Coates is that the defendant, he didn't see the defendant with a gun. Officer Fakadish did. But it is, I will concede, relevant. But it's only relevant in the sense that because Officer Coates made a false statement once before, three years before this incident, in entirely different circumstances, when he was off duty in a situation not involving any of the same people. Well, he's the witness. I mean, that's what defendants always argue when the government tries to put evidence of their prior credibility before the jury. And the government's always arguing, yeah, but it's, you know, it may have been, but it goes to his credibility. Now we hear we have a key situation where it's Edwards' word against the two cops, and it's argued to the jury this isn't a planted gun. So the prosecutor is affirmatively trying to dispel that notion. And there is the fact that one of those two officers actually has a record of lying to fellow police officers, different jurisdiction, maybe off duty, but he lied to them. So why shouldn't they be able to crank that into the calculus and decide, even with that, look, whatever the guy did, but that's, you know, maybe it's too weak to say that that impeaches his credibility. But that's the jury's function, isn't it? I would say it's within the district court's discretion to make that call, and then the call that it did make was reasonable. The defense argued that the gun that was found could have been the gun that some store employee that supposedly owned a gun may have left there. So there were various different theories before the jury as to how that gun got there. But the key fact in that trial was Officer Bakadage, not Officer Coates, Officer Bakadage seeing the defendant with the gun. So I will concede obviously that the false statement that Officer Coates made is relevant, that its relevance is fairly minimal, I would submit, in the sense that it's one false statement three years earlier. It's not showing bias. It's not showing an interest in him. No, it's showing credibility. It is. Absolutely. Do we really believe that these two cops didn't put that gun there? Right. Yes. And that credibility, that the value that that statement had as to credibility is outweighed, we would submit, by the likelihood that that issue would confuse the jury. Why? How would it be confusing? Because the way that it was presented before the district court is that it would come in the context of Officer Coates making a false statement in connection with the DUI. And there are people out there, rightfully, with very strong feelings about DUIs. They believe it's a particularly reprehensible crime, very dangerous conduct, and deserving of serious punishment. And so those sentiments would have a high likelihood of influencing the jury's determination of what happened at the scene, as opposed to what the credibility of the officers is, what the credibility of the defendant is, and the other witnesses who testified about what they had seen. And there was other evidence that existed in addition to the other witnesses that saw various aspects of the incident. And the jury could compare what those witnesses said with what the officer said and vice versa. There was a case agent that testified as to statements that the officers made to him that were slightly different than what they testified to at trial. And the jury was able to filter that through in making its analysis. And that evidence was fine. There's no controversy about that. There was also extensive cross-examination of both officers. Officer Bacowicz, the one that saw the defendant with the gun, whose testimony was absolutely necessary, they cross-examined him for about 54 pages about what was in the report, what was not in the report, differences between what he told. What's that got to do with confusing the jury? Now you're just saying what went in before the jury. What didn't come before the jury is a relevant piece of evidence to one of the key witnesses' truthfulness. You're saying, well, because the context in which he chose to lie is a DUI, which is prejudicial to him as a witness, it's okay to keep it out and let this guy go to the slammer for extra years because you wouldn't want to have the jury have some feelings about the nature or the context in which he told the lie. The point that I was trying to make is it would confuse the jury. I don't care about how Officer Coates' feelings were heard or anything like that. It would be whether or not the jury was distracted from its job. And that's what I think the risk was that the district court was considering when exercising its discretion. Is this going to be? Well, you know, district court didn't have to permit reference to DUI because it just said, you know, allowed examination that he was convicted of a misdemeanor offense. Right? Right. That resolution was not present before the district court. Well, no, but it was open to the district court. What kind of analysis did the district court give? The district court indicated that it didn't believe that – I think it's a little bit hard to get from the record, but it – It certainly is. That's my point. It's very hard to get from the record. It's argued to the district court certainly that the same sort of balancing test I'm making now, which is that it has minimal value in that it's a lie before, so it could be lying now, but it's outweighed by the likelihood the jury will be distracted. Well, didn't this – this is a bifurcated prison. Didn't this originally get – the suppression motion, refresh me, went to Judge King, or was it? And then Judge Cram from the southern district came out and ruled? Yes. That's all we've got, right? Right. It wasn't – it was actually a motion to quash, I believe, on the part of the city attorney of L.A., and that's how the issue was raised. Although there was a subsequent motion in limine on the part of the government to exclude that evidence as being more prejudicial than probative. But the factor that is also present in the Sixth Amendment analysis that wasn't really argued to the district court because it wasn't really relevant at the time is that there was other evidence that allowed the jury to assess the officer's credibility that didn't have any of these prejudicial versus probative questions. What with respect to Coates? The testimony from the case agent as to what the two officers had told him about what had happened versus what they testified to at trial. The defense called actually the case agent in the case. I have to say I really find it very troublesome that a piece of evidence which really goes directly to credibility, whether somebody lies, and you said is relevant, is somehow prejudicial or distracting and keeps the jury from doing its job when it's probably the most, at least as relevant, as perhaps what was said of the case agents. Maybe not as relevant, but certainly would inform the jury whether they had any reason whatsoever to doubt a police officer who was sitting out. Was he in uniform when he testified, do you know? I don't believe he was, actually. But I would submit that it's within the district court's discretion to make the call that it made because the evidence from the case agent during cross-examination was directly concerning the incidents at hand, whether or not they're being truthful about what really happened. I take your point. I see I'm running out of time. There is a sentencing issue I could briefly address. How do you read the transcript as to what the district judge did here? Did she exercise her discretion, having found that this did not, or did she just make a factual finding, a la Walter, that this didn't really measure up and therefore, as a matter of fact, couldn't constitute? Our reading is that the district court actually exercised its discretion. Again, the transcript isn't as clear as it could be. I can see that. But the court did recognize that it had the authority to depart and said I don't believe it's warranted in the circumstances and continued on to say I don't think the situation was so extraordinary as to merit a departure. So you put all that in the mix, it sounds like the court's saying this is extraordinary, but not extraordinary enough for me to, for me, my personal purposes as a judge to grant a downward departure. So I have the discretion as the judge, but I'm not going to exercise it because it's not good enough for me. And did she weigh, could you tell whether or not, were you the prosecutor? Yes. Okay. You argue that the fact that his father had been shot down should not be weighed in that balance. I can't tell from the record whether she did or did not. What's your position? Why wouldn't that be relevant? We submit under the proper ground for departure, which is childhood abuse, it doesn't really fit into that category because it wasn't any caregiver or person that was bringing up the defendant that apparently was involved in the defendant getting shot or the father getting shot. But even if you put it all into the mix and consider what I guess is the second alternative interpretation of what the district court was doing, if you consider the district court to have said, well, let me look at the facts and circumstances, this is not extraordinary at all so that I don't even have the discretion to depart if I wanted to. If you view it that way, it's still not clear error because even considering the defendant being shot, his father being shot in these separate instances apparently, and the abuse that he suffered, it wasn't extreme in the sense found in the other courts that have dealt with the issue. And we cited some examples in our brief. We're familiar with those sexual abuse cases. Exactly, yeah, along with other abuse. So we'll submit on that, Your Honor. Thank you. Thank you. I'll give you a couple minutes for rebuttal. You might address the sentencing issues. Yes, Your Honor. With respect to sentencing, clearly what the government argued was that the facts and circumstances presented were not sufficiently extraordinary. What the district court specifically and explicitly stated was these facts were not so extraordinary as to warrant departure, exactly what the government argued. And the fact is the facts and circumstances presented were sufficiently extraordinary. These do not have to be extreme, as the government just described. No, but that itself, I mean, that doesn't that indicate an exercise of discretion? You know, these facts to me aren't bad enough to warrant a departure. And if the judge had simply said, I find in the exercise of my discretion I'm not going to grant a departure, that would not be true. I don't think our cases require, you know, the pronouncement of any magic words. The transcript just has to show there was an exercise of discretion. Well, with respect, Judge Acima, what these, what this Court has said in multiple cases is that when it comes, that it is a factual finding to say that the facts presented were not sufficiently extraordinary to warrant a departure. And that's what took place here. Judge Cram said the facts presented were not sufficiently extraordinary. But that's different. That's different from a trial judge saying, you know, I think that these are or are not extraordinary facts, and if I could, I would, but I can't. She's not saying that. She's simply declaring, I don't think these are extraordinary enough to warrant a departure. And that's not enough for us to conclude that she knew that she could have departed if she had concluded otherwise? Well, what this Court has said in multiple cases, in cases we said in our briefs, in a case not cited, which this Court just decided two weeks ago in U.S. v. Smith, which was docket 03-304-82, it is reviewable whenever the Court says the facts were not sufficiently extraordinary. Using that language, which was the language used here, that is reviewable by the Court for clear error to determine whether or not the facts presented were sufficiently extraordinary to warrant a departure, not whether the departure ultimately should have been given, but merely whether those facts were sufficiently extraordinary, and if they were, then it must be remanded to the district court to then determine, now that you know these facts were sufficiently extraordinary to warrant a departure, are you going to give one? But can't we tell that from the – I mean, the answer is no. Well, I don't know that the answer is no. The judge could have been under a misapprehension that the facts, that these facts were not. I understand your position. I just read the transcript differently than you do. That's fine. It's the same language, though, that this Court has dealt with in the cases cited in our brief. Okay. We'll take a look at this case. Okay. Thank you very much. I appreciate the arguments of both counsel. The case disargued is submitted. And we'll move to the last case on calendar, which is United States v. Montes. Thank you.
judges: Tashima, Fisher, Tallman